**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

IN RE SUBPOENAS FOR DOCUMENTS
ISSUED TO THOMPSONMCMULLAN, P.C.

                              Civil Action No. 3:16-MC-1


**MEMORANDUM OPINION**

This matter is before the Court on three interrelated motions: NON-PARTY THOMPSONMCMULLAN, P.C.'S MOTION TO QUASH SUBPOENAS FOR DOCUMENTS (Docket No. 1), BONA FIDE CONGLOMERATE, INC.'S MOTION TO COMPEL (Docket No. 9), and SOURCEAMERICA'S MOTION TO QUASH SUBPOENAS ISSUED TO THOMPSON MCMULLAN, P.C. (Docket No. 12). All three motions pertain to Bona Fide Conglomerate, Inc. ("Bona Fide") seeking documents from ThompsonMcMullan, P.C. ("ThompsonMcMullan") for use in Bona Fide's underlying suit against SourceAmerica ("SourceAmerica") in the Southern District of California.

For the reasons stated below, NON-PARTY THOMPSONMCMULLAN, P.C.'S MOTION TO QUASH SUBPOENAS FOR DOCUMENTS (Docket No. 1) will be granted. BONA FIDE CONGLOMERATE, INC.'S MOTION TO COMPEL (Docket No. 9) will be denied. SOURCEAMERICA'S MOTION TO QUASH SUBPOENAS ISSUED TO THOMPSON MCMULLAN, P.C. (Docket No. 12) will be granted.

1

## PROCEDURAL HISTORY

A coherent explanation of the dispute before this Court requires a brief examination of the relationships between the interested parties.

The "AbilityOne" program is a federal procurement program that requires that the federal government exclusively obtain some goods and services from non-profit organizations ("Affiliates") which employ legally blind or severely disabled persons. (Bona Fide's Mem. in Opp. to ThompsonMcMullan's Mtn. to Quash, Docket No. 5, 2-3) ("Bona Fide's TMM Opp."). SourceAmerica is a "Central Non-Profit Agency" ("CNA") responsible for awarding contracts for such goods and services among Affiliates. (Bona Fide's TMM Opp. 3). Bona Fide is one such Affiliate. (Bona Fide's TMM Opp. 3). Between 2009 and 2012, SourceAmerica and Bona Fide were embattled over allegations that SourceAmerica improperly awarded a Las Vegas-based contract to a different Affiliate, when Bona Fide claimed that it was the most qualified vendor under the stated criteria. (Bona Fide's TMM Opp. 3-5). That dispute settled out of court on July 27, 2012. (Bona Fide's TMM Opp. 5). The Settlement Agreement included a provision that SourceAmerica must use its best efforts to treat Bona Fide fairly going forward. (Bona Fide's TMM Opp. 5). The office of SourceAmerica's General Counsel was in charge of monitoring this fair treatment. (Bona Fide's TMM Opp. 5). Jean

Robinson ("Robinson") was, at that time, General Counsel for SourceAmerica. (Bona Fide's TMM Opp. 5).

Despite the Settlement Agreement, SourceAmerica did not award any new contracts to Bona Fide. (Bona Fide's TMM Opp. 5). Beginning in May 2013, Bona Fide's CEO, Ruben Lopez ("Lopez"), began speaking to Robinson about SourceAmerica's award decisions. (Bona Fide's TMM Opp. 5). Lopez recorded "many" of these conversations. (Bona Fide's TMM Opp. 5). Allegedly, Robinson told Lopez that SourceAmerica used a "variety of schemes" to routinely allocate the majority of its contracts, including high value contracts, to a select "club" of Affiliates whose executives or directors had recently sat on SourceAmerica's Board of Directors. (Bona Fide's TMM Opp. 5). "Based largely upon the information gained from Ms. Robinson," Bona Fide brought suit against SourceAmerica in the Southern District of California on April 4, 2014, for breach of the Settlement Agreement (the "California litigation"). (Bona Fide's TMM Opp. 6).

On December 2, 2014, SourceAmerica filed suit against Robinson in the Circuit Court of Fairfax County: case CL-2014-15501. (Bona Fide's TMM Opp. 6). Bona Fide characterizes CL-2014-15501 as "related to [Robinson's] disclosures of SourceAmerica activities to outside sources … including legal malpractice, conspiracy … and breach of fiduciary duty." (Bona

Fide's TMM Opp. 6). SourceAmerica disputes this characterization, and claims that CL-2014-15501 stemmed from several instances of malpractice by Robinson, of which the Bona Fide issue was a small part. (SourceAmerica's Mem. in Supp. of Mtn. to Quash Subpoenas Issued to ThompsonMcMullan, P.C., Docket No. 12, 8, 11) ("SourceAmerica's SA Mem."). In CL-2014-15501, Robinson was represented by ThompsonMcMullen. SourceAmerica and Robinson settled CL-2014-15501 on September 11, 2015. (Bona Fide's TMM Opp. 6). The order of dismissal mandated that

> [Robinson] shall be permanently enjoined from disclosing SourceAmerica's privileged and/or confidential information, as defined in the Settlement Agreement and Release … except as provided for by the Confidential Settlement Agreement and Mutual Release.

(Bona Fide's TMM Opp. 6).

On October 1, 2015, SourceAmerica brought a second suit against Robinson in the Circuit court of Fairfax County: CL-2015-013033. (Bona Fide's TMM Opp. 6-7). ThompsonMcMullen did not represent Robinson in the second suit. (ThompsonMcMullen's Mem. in Supp. of Mtn. to Quash, Docket No. 2, 2) ("ThompsonMcMullen's TMM Mem.").

Meanwhile, in the California litigation, SourceAmerica requested to leave to amend its pleadings (October 30, 2015) and subsequently amended its pleadings (January 7, 2016) to bring counterclaims and third-party claims against Bona Fide and Lopez

for violations of California privacy and unfair competition statutes. (Bona Fide's TMM Opp. 7). The amended claims related to Lopez's communications with Robinson and Lopez's recording of those conversations. (Bona Fide's TMM Opp. 7).

> Given [Robinson's] manifest importance to both [Bona Fide's] claims and [SourceAmerica's] counterclaims, [Bona Fide] subpoenaed ThompsonMcMullen's non-privileged records regarding SourceAmerica's suits against her, with the knowledge that the subject matter of those lawsuits significantly overlapped with this one. Additionally, [Bona Fide] was aware that the first of these suits resulted in the aforementioned Settlement Agreement that could affect Ms. Robinson's future testimony.

(Bona Fide's TMM Opp. 7).

Initially, Bona Fide issued a subpoena to ThompsonMcMullen seeking documents in ThompsonMcMullen's files relating to the CL-2015-13033 case, in which ThompsonMcMullen was uninvolved. On January 4, 2016, Bona Fide served an Amended Subpoena seeking documents related to both the CL-2015-13033 case and the CL-2014-15501 case. (Bona Fide's TMM Opp. 7-8). The Amended Subpoena demanded:

> **REQUEST FOR PRODUCTION NO. 1:**
> Any and all non-privileged DOCUMENTS, including, but not limited to any and all COMMUNICATIONS, RELATED TO case numbers CL-2015-13033 and CL-2014-15501 filed in the Circuit Court of Fairfax County, Virginia.
>
> **REQUEST FOR PRODUCTION NO. 2:**

5

Any and all written agreements between Jean Robinson and SOURCEAMERICA whereby one or both parties, in whole or in part, agreed to settle claims RELATED TO case number CL-2015-13033 or CL-2014-15501 filed in the Circuit Court of Fairfax County, Virginia.

**REQUEST FOR PRODUCTION NO. 3:**
Any and all non-privileged COMMUNICATIONS to which SOURCEAMERICA is a party that are in YOUR custody or control.

**REQUEST FOR PRODUCTION NO. 4:**
Any and all COMMUNICATIONS to which YOU and SOURCEAMERICA are a party.

**REQUEST FOR PRODUCTION NO. 5:**
Any and all non-privileged COMMUNICATIONS to which SOURCEAMERICA and Jean Robinson are a party that are in YOUR custody or control.

**REQUEST FOR PRODUCTION NO. 6:**
Any and all responses, answers, admissions, denials, or DOCUMENTS received by YOU from SOURCEAMERICA pursuant to discovery requests or disclosures in case numbers CL-2015-13033 and CL-2014-15055 filed in the Circuit Court of Fairfax County, Virginia.

**REQUEST FOR PRODUCTION NO. 7:**
Any and all transcripts of depositions taken by any party in case number CL-2015-13033 and CL-2014-15055 filed in the Circuit Court of Fairfax County, Virginia.

**REQUEST FOR PRODUCTION NO. 8:**
Any and all pleadings and case filings, including, but not limited to, the complaint, answer, and any and all motions, affidavits, briefs, and memoranda filed in case numbers CL-2015-13033 and CL-2014-15501 in the Circuit Court of Fairfax County, Virginia.

**REQUEST FOR PRODUCTION NO. 9:**
Any non-privileged DOCUMENTS or COMMUNICATIONS that sufficiently show any

> and all of Jean Robinson's current
> residential address(es).

(Bona Fide's TMM Opp. 8-9).

ThompsonMcMullen informed Bona Fide by telephone that it did not represent Robinson in CL-2015-13033, that it had no documents from CL-2015-13033, and that it had only a "limited file" regarding CL-2014-15055 because the Settlement Agreement required the firm to return or destroy all documents received during discovery. (Bona Fide's TMM Opp. 9). Bona Fide offered to pay the expense of producing whatever non-privileged documents remained in ThompsonMcMullen's possession. (Bona Fide's TMM Opp. 10). ThompsonMcMullen further stated that it would not produce the Settlement Agreement in CL-2014-15055 without a court order on grounds that the Agreement was confidential. (Bona Fide's TMM Opp. 10). Bona Fide offered to agree to a protective order preventing disclosure of confidential documents; ThompsonMcMullen declined. (Bona Fide's TMM Opp. 10).

On January 27, 2016, ThompsonMcMullan filed its Motion to Quash Subpoenas for Documents (Docket No. 1) ("ThompsonMcMullan's TMM Mtn.") and a Memorandum in Support (Docket No. 2) ("ThompsonMcMullan's TMM Mem."). Bona Fide filed a Memorandum in Opposition (Docket No. 5) ("Bona Fide's TMM Opp.") and ThompsonMcMullan filed a Rebuttal Brief (Docket No. 11) ("ThompsonMcMullan's TMM Reply").

After filing its Memorandum in Opposition but before ThompsonMcMullan filed its reply, Bona Fide filed a Motion to Compel (Docket No. 9) ("Bona Fide's BF Mtn.") and a Memorandum in Support (Docket No. 10) ("Bona Fide's BF Mem.") which reiterated the points made in its earlier Motion in Opposition. ThompsonMcMullan's Memorandum in Opposition (Docket No. 14) essentially rests on ThompsonMcMullan's memorandums in support of its own motion. Bona Fide did not file a reply.

SourceAmerica also filed a Motion to Quash (Docket No. 12) ("SourceAmerica's SA Mtn.") and a Memorandum in Support (Docket No. 13) ("SourceAmerica's SA Mem."). Bona Fide filed a Memorandum in Opposition (Docket No. 15) ("Bona Fide's SA Opp.") and SourceAmerica filed a reply (Docket No. 16).

## ANALYSIS

### I. SourceAmerica's Standing

Fed. R. Civ. P. 45 governs standing to bring a motion to quash, and Fed. R. Civ. P. 26(c) governs the right to bring a motion for a protective order. See also Singletary v. Sterling Transport Co., Inc., 289 F.R.D. 237, 239, 240 n.2 (E.D. Va. 2012).

First, SourceAmerica has standing to seek a protective order under Fed. R. Civ. P. 26(c)(1). "A party or any person from whom discovery is sought may move for a protective order in

8

the court where the action is pending … The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). This encompasses one party's right to challenge an opposing party's subpoenas directed at a third-party. Singletary, 289 F.R.D. at 239, 240 n.2 (collecting Eastern District of Virginia cases for the proposition that parties may seek to quash and seek protective orders when third parties are subpoenaed). SourceAmerica, as a party, clearly has standing to seek a protective order for any of the reasons listed in Rule 26(c)(1).

Bona Fide argues that SourceAmerica lacks standing to challenge the Amended Subpoena on the ground of undue burden. For this proposition, Bona Fide relies on a series of cases out of the Southern District of Ohio. (Bona Fide's SA Opp. 7) (relying on Malibu Media, LLC v. Doe, 2015 WL 268995, at *2 (S.D. Ohio. 2015)) ("only the entity responding to the subpoena has standing to challenge the subpoena on the basis of undue burden."). However, it is the practice and precedent in this district that parties enjoy the right to challenge subpoenas directed at third parties on the basis of undue burden. E.g., Singletary, 289 F.R.D. at 239, 240 n.2; In re Subpoena Duces Tecum to AOL, LLC, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008). Such practice and precedent conforms with the text of Fed. R.

9

Civ. P. 26, which states that "[t]he court may, for good cause, issue an order to protect a … person from undue burden." Fed. R. Civ. P. 26(c)(1).[1] The rule does not impose any limitations prohibiting a party from raising the issue of undue burden on behalf of a third party before the court issues that undue burden order.[2] Bona Fide's reliance on Malibu Media is, accordingly, unavailing under precedent in this district.

Second, Source America has standing to quash the instant subpoena because of the interplay between Rules 26 and 45. SourceAmerica unquestionably has standing to challenge any confidential or privileged material covered by the Amended Subpoena. "Ordinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena." United States v. Idema, 118 Fed. App'x 740, 744 (4th Cir. 2005) (unpublished);[3] Singletary, 289 F.R.D.

---

[1] Undue burden may be established by proving irrelevance or overbreadth, as discussed in the subsequent section of this opinion.

[2] Rule 45 likewise lacks any provision circumscribing standing on the issue of undue burden. Fed. R. Civ. P. 45(d)(3) ("the court … must quash or modify a subpoena that … subjects a person to undue burden."); Fed. R. Civ. P. 45(d)(1) ("A party … issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden … on a person subject to the subpoena").

[3] Unpublished opinions of the Fourth Circuit are not binding, but are persuasive analytical tools.

at 239.[4] To the extent that SourceAmerica claims that the request includes confidential and privileged information, SourceAmerica unquestionably claims the sort of personal right or privilege contemplated by Rule 45. (SourceAmerica's SA Mem. 8, 11).

The interaction between Rules 26 and 45 also gives SourceAmerica standing to quash those portions of the subpoena which do not implicate SourceAmerica's privileges or personal rights on undue burden grounds. Courts in this district take a pragmatic approach to the interactions of Rules 26 and 45. E.g., Singletary, 289 F.R.D. at 240 n.2. Because a protective order has the practical effect of both quashing an instant subpoena and preemptively quashing all future subpoenas, courts in this district have held that a party's standing to seek a protective order on behalf of a third party on the basis of undue burden establishes that party's standing to move to quash a subpoena on the same basis of undue burden (including irrelevance or overbreadth). Singletary, 289 F.R.D. at 240 n.2 (collecting cases in various districts); Pena v. Burger King Corp., 2:12cv248, slip op. at 3 (E.D. Va. Sept. 21, 2012) (Docket No.

---

[4] Such cases of "personal right or privilege" often arise in situations where a defendant subpoenas a plaintiff's previous employers regarding plaintiff's employment history. Singletary, 289 F.R.D. at 240 n.2 (collecting cases in various districts); Pena v. Burger King Corp., 2:12cv248, slip op. at 3 (E.D. Va. Sept. 21, 2012) (Doc. 23).

23).  This  practical  rule  is  also  consistent  with  the  Eastern
District  of  Virginia's  recognition  that  the  relevance
constraints  of  Rule  26(b)  serve  as  constraints  on  all  other
discovery  mechanisms,  including  Rule  45,  such  that  parties  have
standing  to  challenge  any  discovery  request  that  imposes  an
undue  burden  by  seeking  information  beyond  the  scope  of
relevance  set  by  Rule  26.  Cook v. Howard,  484  F.  App'x  805,  812
(4th  Cir.  2012);  Union First Market Bank v. Bly,  3:13-CV-598,
2014  WL  66834,  *3  (E.D.  Va.  Jan.  6,  2014);  Stoney Glen, LLC v.
Southern Bank & Trust Co.,  2:13-CV-8,  2013  WL  5514293,  *4  (E.D.
Va.  Oct.  2,  2013);  Singletary,  289  F.R.D.  at  241.[5]

SourceAmerica  has  standing  to  quash  the  subpoena  under  Fed.
R.  Civ.  P.  45  and  standing  to  seek  a  protective  order  under  Fed.
R.  Civ.  P.  26.

## II. Undue Burden, Relevance, and Overbreadth

### A. Governing Law

Rule  45  governs  third-party  subpoenas.  Fed.  R.  Civ.  P.
34(c);  Union First Market Bank,  2014  WL  66834  at  *3.  Rule
45(c)(3)  provides  that  a  court  may  quash  or  modify  a  subpoena
that  "subjects  a  person  to  undue  burden."  Fed.  R.  Civ.  P.

---

[5] This  is  discussed  in  greater  depth  in  the  following  section.

45(d)(3); <u>Stoney Glen</u>, 2013 WL 5514293 at *4. Additionally, the "party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(c)(1).

A party may seek to quash or modify a subpoena on grounds of irrelevance or overbreadth, even though irrelevance and overbreadth are not explicitly listed as grounds to quash in Rule 26(c)(1) or Rule 45(c)(1), because either irrelevance or overbreadth necessarily establishes undue burden. This corollary to Rules 26(c)(1) and Rule 45(c)(1) arises from their interaction with Rule 26(b).

> Rule 26(b) limits the scope of discovery to those materials that are "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevant information need not be admissible at trial, but it must appear to be "reasonably calculated to lead to the discovery of admissible evidence." <u>Id.</u> Notably, the Court "must limit the frequency or extent of discovery" if "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." <u>Id.</u> at 26(b)(2)(C). As such, the Court may quash a subpoena duces tecum as overbroad if it "does not limit the [documents] requested to those containing subject matter relevant to the underlying action." [<u>AOL</u>, 550 F. Supp. 2d at 612]; <u>see also</u> [<u>Sirpal v. Fengrong Wang</u>, No. CIV. WDQ-

> 12-0365, 2012 WL 2880565, at *5 (D. Md. July 12, 2012)].
>
> Further, the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by forbidding the disclosure or discovery of the material at issue. Fed.R.Civ.P. 26(c)(1) .... This undue burden category "encompasses situations where the subpoena seeks information irrelevant to the case." Cook, 2012 WL 3634451, at *6 n. 7. Moreover, "[a] subpoena imposes an undue burden on a party when [it] is overbroad." [AOL, 550 F.Supp.2d at 612].

Singletary, 289 F.R.D. at 241. Put another way, any subpoena that seeks evidence that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, or that is so overbroad that compliance with its demands will necessarily require production of irrelevant evidence, seeks evidence outside the scope of Rule 26(b)(1). Such a subpoena creates an undue burden because it necessarily imposes greater hardship than is necessary to obtain proper discovery. It is also well-accepted in this district that the scope limitations of Rule 26 apply to all methods for obtaining discovery, including the bases for protective orders under Rule 26(c) and the subpoena powers enumerated in Rule 45. Cook v. Howard, 484 F. App'x at 812; Union First Market Bank, 2014 WL 66834 at *3; Stoney Glen, 2013 WL 5514293 at *4. Rule 45(c)(3) requires a Court to quash subpoenas that subject a person to "undue

14

burden," and because "undue burden" is necessarily established where a party proves irrelevance or overbreadth because of the scope limitations of Rule 26, Rule 43(c)(3) requires the Court to quash subpoenas which seek irrelevant information or are overbroad. Singletary, 289 F.R.D. at 241; AOL, 550 F. Supp. 2d at 612.

The AOL ruling is instructive in this case, and teaches that subpoenas must impose parameters explicitly limiting the scope of the subpoena to material relevant to the underlying case. In AOL, the third-party Rigsbys uncovered apparent insurance fraud by State Farm involving federal Hurricane Katrina. AOL, 550 F. Supp. 2d at 608. Part of the fraud related to the McIntoshes, who filed suit against State Farm in the Southern District of Mississippi. Id. The Rigsbys were non-party witnesses in the McIntoshes' suit against State Farm. Id. As part of discovery in the McIntosh case, State Farm issued a subpoena through the Eastern District of Virginia to AOL,

> requesting production of documents from the Rigsbys' e-mail accounts pertaining to [the McIntoshes], State Farm['s] claims handling practices for Hurricane Katrina, Forensic Analysis & Engineering Corporation's documents for Hurricane Katrina, and E.A. Renfroe & Co.'s [the Rigsby's employer] claims handling practices for Hurricane Katrina over a ten-month period. State Farm's subpoena also requested any and all documents, including electronically stored information, related to Cori Rigsby's e-mail account or address from September 1, 2007,

> to October 12, 2007, a six-week period where
> Cori Rigsby and her attorneys allegedly
> concealed from State Farm that her computer
> had crashed.

Id. The Rigsbys moved to quash the subpoena on the grounds that the subpoena violated the Privacy Act, was overbroad and unduly burdensome, and requested production of emails including privileged information. Id. at 609.

The AOL court upheld a magistrate judge's order quashing State Farm's subpoena "because the subpoena is overbroad to the extent that it does not limit the documents requested to subject matter relevant to the claims or defenses in McIntosh and imposes an undue burden on the Rigsbys." Id. at 612. The Court concluded that

> State Farm's subpoena must be quashed
> because it imposes an undue burden on the
> Rigsby by being overbroad and requesting
> 'all' of Cori Rigsby's e-mails for a six-
> week period … State Farm's subpoena is
> overbroad because it does not limit the
> emails requested to those containing subject
> matter relevant to the underlying action or
> sent to or from employees connected to the
> litigation … State Farm's subpoena [is]
> overbroad because the e-mails produced over
> a six-week period would likely include
> privileged and personal information
> unrelated to the McIntosh litigation,
> imposing an undue burden on Cori Rigsby.

Id. The rule of AOL is thus: subpoenas must impose parameters limiting the subpoena's scope to evidence relevant in the

16

underlying litigation.[6] Without such parameters, the subpoena is overbroad or seeks irrelevant information, and imposes an undue burden.

### B. Application to Facts

Bona Fide's Subpoena requests, essentially, documents related to SourceAmerica's litigation against Robinson, the CL-2014-15501 case. However, according to SourceAmerica, a substantial portion of the CL-2014-15501 case had nothing to do with the subject matter in the California liigation. SourceAmerica states that the CL-2014-15501 case asserted causes of action for legal malpractice, conspiracy, and breach of fiduciary duty relating to more than just Bona Fide: SourceAmerica alleged that Robinson made unauthorized disclosures to another Affiliate, violated her duties with

---

[6] Theofel v. Farey-Jones, 359 F.3d 1066, 1071-72 (9th Cir. 2004) stands for a similar proposition. In that case, plaintiff's counsel sent a subpoena to defendant's email host, demanding all of defendant's emails, without limiting the scope of the subpoena temporally or to the subject matter of the underlying litigation. Theofel, 359 F. 3d at 1071. The district court and then the Ninth Circuit roundly castigated plaintiff's counsel. Id. ("One might have thought... that the subpoena would request only e-mail related to the subject matter of the litigation, or maybe messages sent during some relevant time period, or at the very least those sent to or from employees in some way connected to the litigation."). Although Theofel deals with a subpoena more egregiously overbroad than in AOL or this case, it stands as persuasive support for the AOL court's rule that third-party subpoenas must be narrowly crafted to relevant subject matter in the underlying litigation.

regard to handling SourceAmerica's response to a subpoena issued by the federal government, "egregiously mishandled" an Equal Employment Opportunity Commission charge, and "violated her employment contract by providing legal services to third parties after the start of her employment." (SourceAmerica's SA Mem. 3-4). SourceAmerica also points out that ThompsonMcMullen likely possesses communications between SourceAmerica executives and SourceAmerica's outside counsel in several other cases wholly unrelated to Bona Fide's contract claim in the California litigation or to SourceAmerica's claims in the California litigation. (SourceAmerica's SA Mem. 8).

It is clear that the Amended Subpoena encompasses some material relevant to the California litigation, but also that the Amended Subpoena as written encompasses a good deal of information irrelevant California litigation. The Amended Subpoena is, accordingly, overbroad and seeks irrelevant information. Because a "subpoena imposes an undue burden on a party when a subpoena is overbroad," the Amended Subpoena will be quashed on the basis of undue burden as established by irrelevance and overbreadth. AOL, 550 F. Supp. 2d at 612 (relying on Theofel, 359 F.3d at 1071).

Bona Fide argues briefly that, because SourceAmerica has engaged in "heavy and often obstructionist motions practice" in the underlying case,

> Bona Fide believes that if it were to
> include any subject matter limitations,
> SourceAmerica would interpret those
> limitations in such a way as to prevent
> disclosing information that is essential to
> the [underlying case.] Because of these
> concerns and the high likelihood that any
> documents SourceAmerica would produce … will
> be filtered or incomplete, it is also
> essential that Plaintiff receive the
> documents from Thompson McMullan [sic]
> directly.

(Bona Fide's SA Opp. 11). Even taking Bona Fide's allegations of obstructionism as true for the moment,[7] Bona Fide has only alleged grounds for serving a broad subpoena on SourceAmerica. Bona Fide has made no showing – indeed, has not even claimed – that ThompsonMcMullen would "interpret those limitations in such a way as to prevent disclosing information that is essential" to the underlying case, or that ThompsonMcMullen would otherwise fail to comply with a subpoena which properly limited its scope to subject matter relevant in the California litigation. Bona Fide cannot rely on SourceAmerica's alleged obstructionism to justify serving an overbroad, and thus unduly burdensome, subpoena on ThompsonMcMullen.

The briefing contains a factual dispute over unfair burden as it pertains to producing and privilege logging documents; however, it is not necessary to resolve that factual dispute to

---

[7] SourceAmerica's compliance or lack of compliance with its discovery obligations is most properly assessed by Judge Curiel in the Southern District of California.

rule on these motions. ThompsonMcMullen stated in its memorandum that the production of non-privileged communications related to the Robinson cases would "require the collection and review of potentially hundreds if not thousands of emails each working day over a nearly eight month period," along with "time intensive" privilege review. (ThompsonMcMullen's TMM Mem. 4). Bona Fide alleges that ThompsonMcMullen, in a phone conference, stated that ThompsonMcMullen had only a "limited case file," due to the Settlement Agreement's provision that ThompsonMcMullen destroy or return much of the discovery in the case. (Bona Fide's TMM Opp. 9-10). If this issue were dispositive to undue burden, the Court might seek testimony on the size of ThompsonMcMullen's Robinson files.[8] However, as noted, ThompsonMcMullen has already demonstrated undue burden by proving overbreadth, such that it is not necessary to determine whether ThompsonMcMullen has so many documents that producing them would also be unduly burdensome.

---

[8] The Court notes, however, that it is not necessarily inconsistent for ThompsonMcMullen to (1) possess thousands of emails regarding the Robinson matter on its servers, but (2) have returned or destroyed the documents related to discovery. By way of example, ThompsonMcMullen might have retained all emails between its attorneys and SourceAmerica's counsel in the Robinson matter on issues that attorneys must attempt to resolve amongst themselves, such as discovery disputes. These communications would, conceivably, not be part of the Settlement Agreement's mandate to return or destroy documents produced in discovery.

In conclusion, the Amended Subpoena must be quashed as irrelevant and overbroad, and thus unduly burdensome, under Fed. R. Civ. P. 45.

## III. More Easily Obtained From Another Source and Respect for the California Court

### A. Governing Law

Fed. R. Civ. P. 26(b)(2)(C) states that, "on motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed … if it determines that … the discovery sought … can be obtained from some other source that is more convenient, less burdensome, or less expensive." As previously noted, Fed. R. Civ. P. 45's rules for quashing or modifying third-party subpoenas are subject to the general relevance discovery limitations of Rule 26. E.g., Cook v. Howard, 484 F. App'x at 812; Union First Market Bank, 2014 WL 66834 at *3; Stoney Glen, 2013 WL 5514293 at *4; see also Fed. R. Civ. P. 45(d)(2)(B)(ii) (stating that courts "must protect a person who is neither a party nor a party's officer from significant burden and expense resulting from compliance"). Thus, the Court must quash or modify a subpoena if the information sought is obtainable from another, more convenient source.

## B. Application to Facts

ThompsonMcMullen raised the "obtainable from some other source that is more convenient, less burdensome, or less expensive" argument in its opening memorandum. (ThompsonMcMullen's TMM Mem. 3, 5) ("Bona Fide has access to the requested information from another source … SourceAmerica. SourceAmerica has each and every non-privileged communication requested in the Subpoenas. It would seem that the most efficient and least burdensome method of obtaining these communications would be through discovery in the underlying lawsuit."). Bona Fide acknowledged this argument (e.g., Bona Fide's TMM Opp. 9), but never rebutted it.

The Court finds ThompsonMcMullen's argument compelling. There is no reason to burden a third party with discovery when the opposing party has all of the information requested. Moreover, although Bona Fide reiterates that it is willing to compensate ThompsonMcMullen for the time spent producing these documents and completing privilege logs, this misses a fundamental fact of the practice of law: forcing ThompsonMcMullen to divert resources to an unnecessary subpoena will divert ThompsonMcMullen from working on active cases for clients whose further needs it must serve. That is also a factor in assessing the burden issue.

Bona Fide argues that it has "serious concerns about its ability to obtain accurate, unfiltered information about the events and disclosures at issue and their impact on Ms. Robinson's testimony about SourceAmerica directly" (Bona Fide's SA Opp. 8, 11), such that obtaining discovery from third-party ThompsonMcMullen is actually "more convenient, less burdensome, [and] less expensive" than obtaining discovery from SourceAmerica. In particular, Bona Fide argues that SourceAmerica has employed "heavy and often obstructionist motions practice" in the underlying case and "repeated[ly] attempt[ed] to discourage or prevent Ms. Robinson from testifying in that case." (Bona Fide's SA Opp. 8, 11). To demonstrate this alleged obstructionism, Bona Fide also argues that SourceAmerica actually shredded documents relevant to the underlying suit. (Bona Fide's SA Opp. 11) (relying on Docket No. 7, Ex. 1, p. 65-66).[9] If SourceAmerica has violated its discovery

---

[9] Robinson allegedly told Lopez that SourceAmerica shredded documents (the contents of these documents are unknown) the day after GSA-OIG served a subpoena on SourceAmerica. (Docket No. 7, Ex. 1, p. 65-66). There are several problems with using this to support the "necessity" of the ThompsonMcMullen subpoena. First, the contents of these documents is completely unknown (Bona Fide does not even speculate that they might contain information relevant to the underlying case), such that there is a more-than-reasonable possibility that such shredded documents are not "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Second, if SourceAmerica shredded these or other documents prior to discovery in CL-2014-15501, it would be impossible for SourceAmerica to produce them in CL-2014-15501,

obligations in such a manner, Bona Fide should seek appropriate relief from the Southern District of California compelling SourceAmerica to produce the documents to which Bona Fide believes it is entitled. The California court unquestionably possesses better perspective on the parties conduct than this Court, and is perfectly capable of crafting discovery orders that suit the parties' conduct and Bona Fide's needs for

---

and thus for ThompsonMcMullen to possess them. There is no point in doing an end-run around the California court's authority to control discovery in the underlying litigation for documents that ThompsonMcMullen cannot possibly possess under the facts as alleged. Third, even if SourceAmerica gave relevant documents to ThompsonMcMullen, and subsequently destroyed them (in a purely hypothetical rash of document-shredding, since Robinson only refers to document shredding while she was employed, prior to the CL-2014-15501 litigation), ThompsonMcMullen states that it returned almost all discovery as required by the Settlement Agreement, such that ThompsonMcMullen, again, has nothing to produce. Finally, if Bona Fide intends to shredding anecdote to merely cast SourceAmerica as the type of firm that (1) shreds documents and (2) stonewalls others in discovery, it follows that SourceAmerica would have engaged in the same stingy discovery with ThompsonMcMullen as it has with Bona Fide, such that ThompsonMcMullen will, once again, have nothing useful to give to Bona Fide. In short, if SourceAmerica destroyed evidence relevance, then ThompsonMcMullen almost certainly does not have that evidence, such that this avenue of discovery is not reasonably calculated to lead to admissible evidence, and Bona Fide should seek an adverse inference instruction in the California court, rather than seeking a fruitless subpoena in this district. If SourceAmerica does not destroy evidence, then Bona Fide can obtain that evidence most conveniently, and in a way that respects the authority of the California court, through SourceAmerica.

discovery from SourceAmerica.[10] Moreover, given that Bona Fide
seeks the same material from ThompsonMcMullen in this Court that
it seeks from SourceAmerica in the underlying case, this Court
should not act to interfere with the present or future rulings
by the California court finding that Bona Fide is not entitled
to such documents from SourceAmerica – or, as SourceAmerica
characterizes it, has the potential to serve as an "end run"
around the California court. Out of respect for the authority of
its sister courts, this Court cannot and will not compel
production from ThompsonMcMullen when so doing so results in
giving Bona Fide two bites at the same apple.

   If the Amended Subpoena were merely overbroad or sought
irrelevant information, as discussed in the previous section,
then the Court might simply quash this Amended Subpoena and
leave Bona Fide free to seek another subpoena tailored to the
subject matter of the California litigation. However, on the
facts as presented, even a more narrowly tailored subpoena would

---

[10]  Bona Fide and SourceAmerica, perhaps recognizing the
California court's superior vantage point, initially brought a
joint motion regarding their dispute over this subpoena in the
Southern District of California. Bona Fide Conglomerate, Inc. v.
SourceAmerica, et al., Case No. 3:14cv751 (S.D. Cal. Jan. 22,
2016) (Joint Motion for Determination of Discovery Dispute,
Docket No. 277). The court denied the motion, noting that the
current version of Rule 45 requires that motions to quash be
filed in the district where compliance is required. Bona Fide
Conglomerate, Inc. v. SourceAmerica, et al., Case No. 3:14cv751
(S.D. Cal. Feb. 18, 2016) (Order Regarding Joint Motion for
Determination of Discovery Dispute, Docket No. 290).

still be inappropriate on the grounds that such information could "be obtained from some other source that is more convenient, less burdensome, or less expensive," and obtained in a way which better respects the California court's authority to control discovery.[11] For this reason, and for the standing reasons discussed below, the Court finds it appropriate to both quash the Amended Subpoena and to grant a protective order.

## IV. Issuance of a Protective Order

ThompsonMcMullen did not actually request a protective order, but SourceAmerica did. (SourceAmerica's SA Mem. 12-14). As noted in the discussion of SourceAmerica's standing, Bona Fide contests SourceAmerica's standing to seek a protective order on the basis of undue burden. (Bona Fide's SA Opp. 6-8). However, as explained in the discussion on standing, Rule 26 and precedent in this district make it clear that (1) third parties may seek protective orders on the basis of undue burden and (2) either overbreadth or irrelevance necessarily establish undue burden. Fed. R. Civ. P. 26(c)(1); AOL, 550 F. Supp. 2d at 612. Because ThompsonMcMullen and SourceAmerica have established that the Amended Subpoena imposes an undue burden (through

---

[11] Because the Court will quash the subpoena and enter a protective order, there is no need to address arguments about privilege.

26

overbreadth and irrelevance), that the information sought may be obtained more easily from another source, and that allowing Bona Fide to subpoena ThompsonMcMullen is likely to undermine the California court's rightful control over the discovery process, SourceAmerica's request for a protective order will be granted.

## CONCLUSION

For the reasons stated below, NON-PARTY THOMPSONMCMULLAN, P.C.'S MOTION TO QUASH SUBPOENAS FOR DOCUMENTS (Docket No. 1) will be granted. BONA FIDE CONGLOMERATE, INC.'S MOTION TO COMPEL (Docket No. 9) will be denied. SOURCEAMERICA'S MOTION TO QUASH SUBPOENAS ISSUED TO THOMPSON MCMULLAN, P.C. (Docket No. 12) will be granted.

It is so ORDERED.

_____ /s/ _____

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date:  March  17, 2016